SAMUEL M. BURDETTE *v.* ALEXANDER JAY BRUEN *et al.*

(No. 8449)

Submitted April 27, 1937. Decided May 11, 1937.

*Staige Davis* and *S. L. Flournoy*, for appellant.
*Harold A. Ritz* and *B. J. Pettigrew*, for appellees.

Fox, Judge:

On December 30, 1867, Alexander M. Bruen, being the owner of a large tract of land, situated in Kanawha and adjoining counties, locally known as the "Sheba Tract", conveyed to Jane Botkin 250 acres thereof. The deed conveying the same contains the following provision:

> "Excepting and reserving from this grant all coal iron and minerals & the right to use and work the same for the use and benefit of the party of the first part, with all rights of way and other matters, necessary to the full enjoyment of said reserved rights, no conveyance of the same being hereby intended. This reservation however shall not prevent the use of the coal for private and family use of the said Jane Botkin."

Title to tracts of 72 acres and 50 acres, parts of the 250 acres so granted, passed by mesne conveyances from Jane Botkin to plaintiff, Samuel M. Burdette. By writing dated January 31, 1907, the heirs at law of Alexander M. Bruen leased to the United Fuel Gas Company, for oil and gas purposes, a large boundary of land in Kanawha County, containing some forty thousand acres, excluding interfering claims, but which includes the Botkin tract of 250 acres, which lease was afterwards transferred to the United Fuel Gas Company, a company having the same name as the original lessee, but a different

corporate entity. The interests of other parties are involved, but they are determined by the principal issue between the plaintiff and the United Fuel Gas Company. The plaintiff contends that the exception in the deed executed by Alexander M. Bruen does not apply to the oil and gas in the land conveyed thereby, and prays for the cancellation of the lease of such oil and gas made by the Bruen heirs, which includes said tract, as a cloud upon his title to the 72 acres and 50 acres owned by him. The defendant, United Fuel Gas Company, insists that the exception embraces all minerals, including oil and gas. From a final decree denying relief to the plaintiff, he prosecutes this appeal.

It is undisputed that a provision in a deed conveying minerals, or excepting and reserving the same, not limited or qualified as to intention by any other clause of the deed, includes not only solid mineral but oil and gas as well. *Sult* v. *Hochstetter Oil Company*, 63 W. Va. 317, 61 S. E. 307; *Horse Creek Land and Mining Co.* v. *Midkiff*, 81 W. Va. 616, 95 S. E. 26; *Rock House Fork Land Co.* v. *Raleigh Brick and Tile Co.*, 83 W. Va. 20, 97 S. E. 684, 17 A. L. R. 144; *Murphy* v. *Vanvoorhis*, 94 W. Va. 475, 119 S. E. 297; *Norman* v. *Lewis*, 100 W. Va. 429, 130 S. E. 913; *Waugh* v. *Land & Coal Co.*, 103 W. Va. 567, 137 S. E. 895; *Jeffrey* v. *Spruce-Boone Land Co.*, 112 W. Va. 360, 164 S. E. 292, 86 A. L. R. 966. Therefore, the only question involved herein is whether or not the use of the words "coal iron", in the exception contained in the deed under consideration, serves to limit the same to the two minerals specifically mentioned. In view of the uniformity of the holding of this court, giving to the word "mineral" the broad application as to the character of minerals it covers, courts are loath to limit the application thereof, except in cases where it is clearly apparent, from the face of the instrument being construed, that the minerals conveyed, excepted or reserved are intended to be restricted; or in cases where the meaning is not clear from the language used, the surrounding circumstances and actions of the parties suggest such limitation.

While the rule above announced is well settled in this jurisdiction, there has grown up the doctrine that the effect of the use of the word "mineral" or "minerals" may be restricted where it is apparent from the instrument being construed, or from surrounding circumstances, properly shown, where the writing is ambiguous, that the word was intended to be used in a more restricted sense. This doctrine has been applied, by this court, where the mining rights and privileges have been held to apply to a particular class of mineral, from which the court drew the conclusion that only the mineral to which the mining rights could reasonably apply was intended to be conveyed, excepted or reserved. *Rock House Fork Land Co.* v. *Raleigh Brick and Tile Co., supra.* And in *Horse Creek Land and Mining Co.* v. *Midkiff, supra,* where it was held that the use of the words "all the minerals, coals" reserved only the coals, the reasoning being that the use of the word "coals" was intended to restrict and limit the meaning of the word "minerals", as used in the deed then under consideration. But in no other case, decided by this court, has there been a departure from the rule announced in the cases first above cited.

The fact that the case of *Horse Creek Land and Mining Co.* v. *Midkiff, supra,* is so strongly relied on by the plaintiff calls for some discussion of the application of the holding therein to subsequent cases before this court. *Murphy* v. *Vanvoorhis, supra,* interprets the case as holding only, that the use of the word "coals" limited the ordinary meaning of the word "minerals" under the circumstances of that case, where, as the court said, it was apparent that it was the intention of the grantor to reserve only the coal. In the case of *Norman* v. *Lewis, supra,* it was held that "a reservation in a conveyance of land of 'all mineral, coal, iron etc.' includes oil and gas", and the holding of the *Midkiff* case is passed over with little discussion, although some effort is made to distinguish the two cases. In *Waugh* v. *Land & Coal Co., supra,* the use of the words "all veines of coal & mineral", "the coal and mineral", and "mineral" are held to include oil and gas, although the situation of the parties, and

their subsequent acts, are given some weight in arriving at the decision; and in the case of *Jeffrey* v. *Land Co., supra,* the words "all the coal and mineral" were held to embrace all minerals in the land. So we conclude, in the light of the cases subsequent to the *Midkiff* case, that the application of that case to the present controversy, to the extent contended for by the appellant, cannot be conceded.

The language of the exception in the Bruen deed seems clear and unambiguous. It is "all coal iron and minerals & the right to use and work the same". If we are to give the words their plain and ordinary meaning, and no safer method of construction can be used, the grantor meant to except the coal and iron in the land conveyed. As to that there can be no question. But he did not stop there. Evidently, he meant to except something more. After using the words which unquestionably excepted the coal and iron, he used the additional words "and minerals." For what purpose did he use them? If he meant to except only the coal and iron, why use the words "and minerals"? It may be said these words were used to include minerals of the same class as coal and iron, but on what is this contention based? There is nothing in the deed from which such a meaning can be drawn. If we adopt this contention, it must be mere conjecture. We have seen what the word "mineral" means as defined by our decisions, and where, as in this case, the grantor has, by the use of words, which, given the ordinary and accepted meaning accorded them by our decisions, except all the minerals in the land conveyed, including oil and gas, we are not warranted in resorting to speculation and conjecture as to any hidden meaning in the language employed.

The appellant lays considerable stress on the doctrine of *ejusdem generis,* and contends that its application to the facts of this case sustain his position, as to the construction of the deed in question. We have no disposition to minimize the force of this doctrine applied in a proper case, but we do not think it can be invoked where the language under consideration is clear and unambiguous

as to what is intended. The rule may not be invoked where it conflicts with that other rule of construction, that, where possible, a writing shall be so construed as to give meaning to its every phrase and word. "Where the result of thus restricting the general words would be that they have no effect at all, they must be extended to things superior in quality to those enumerated." 2 Lewis' Sutherland Stat. Const., Section 436. To adopt the contention of the appellant would be to render substantially meaningless the words "and minerals" used in the deed, and if any meaning remains, resort to speculation and conjecture is required to reach what is supposed to have been intended. Where the intention of the parties to a contract is made clear from the language used, there is no call for the use of any rule of construction. In this case, the language employed, in the light of our decisions, carries its own construction. But if this be not true, then we hold that the case of *Norman* v. *Lewis, supra,* along with other cases growing out of the conveyance, exception and reservation of minerals, disposes of the question so far as concerns this jurisdiction. In *Norman* v. *Lewis, supra,* the words "coal, iron etc." are used following the word "mineral", laying ground for the contention that the use of the words first quoted was intended to limit the meaning of the broader term of "minerals". In that case, specific words were used to define the minerals excepted, furnishing a clear case for the contention that the doctrine of *ejusdem generis,* here asserted, was applicable, and yet the court held that the meaning of the word "mineral" was not restricted thereby and that it included oil and gas. We have found no case in this jurisdiction where the doctrine has been applied to conveyances of minerals or even asserted as applying; and to permit its application now, when the effect would necessarily be to create doubt as to the stability of a rule of property, which has had for its basis the wide and liberal meaning which this court, in numerous decisions, has given to the term "minerals" would be to transgress upon the most salutary rule and policy tending to set at rest questions of law affecting title to and dealings in property, of a

permanent character, such as is here involved.

We hold that the exception contained in the deed from Alexander M. Bruen to Jane Botkin covers the oil and gas in the tract of land conveyed thereby, and the decree of the court below is, therefore, affirmed.

*Affirmed.*