57 So.2d 64

### CARTER OIL CO. v. BLAIR.
### 3 Div. 563.

Supreme Court of Alabama.
Dec. 21, 1951.

Rehearing Denied March 6, 1952.

Ball & Ball, Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and H. Grady Tiller and W. W. Livingston, Asst. Attys. Gen., for appellee.

LAWSON, Justice.

This is a bill in equity filed in·the circuit court of Montgomery County, in equity, by appellant, The Carter Oil Company,

against Philip J. Hamm, as Commissioner of Revenue of the State of Alabama.

The bill alleges that it is filed under the authorization of § 810, Title 51, Code 1940, which section in substance provides that use tax may be paid under protest; that within two years from the date such tax was due and payable, the taxpayer may maintain an action for declaratory judgment against the Commissioner of Revenue, in the circuit court of Montgomery County, in equity, for a determination of the taxpayer's liability for the amount of use tax paid under protest or his rights to a refund thereof; that upon the rendition of a judgment declaring that the taxpayer is entitled to a refund, it is the duty of the comptroller, upon presentation of a certified copy of the judgment or decree, to issue his warrant in favor of the taxpayer for the sum determined to be due, together with interest at six per cent per annum; that "failure to bring suit within said two years shall constitute waiver of any and all demands against the state on account of alleged overpayments hereunder." See Ex parte State ex rel. Lawson, Attorney General, 241 Ala. 304, 2 So.2d 765; Poer v. Curry, Commissioner of Revenue, 243 Ala. 76, 8 So.2d 418; Layne Central Co. v. Curry, Commissioner of Revenue, 243 Ala. 165, 8 So.2d 839.

It is alleged, in effect, that the use tax which complainant paid under protest was illegally exacted on two grounds: first, that the tax was paid on items which are exempt from use tax by virtue of § 789(p), Title 51, Code 1940; second, that sales tax had already been paid on the items, or some of them, in the state where such items were purchased and from which they were removed to this state and, therefore, the State of Alabama could not legally exact payment of use tax on such articles.

The bill prays: "Wherefore, complainant brings this its suit asking for a declaratory judgment determining its tax liability for the amounts so paid and its right to a refund thereof, in accordance with Section 810 of Title 51 of the Code of Alabama, and for the recovery by complainant of the amounts paid under verified protests as Use Tax, all as set out above, and prays

that by due and proper process the respondent be made party hereto and required to answer, plead or demur hereto within the time provided by law and the rules of this Honorable Court, and upon a final hearing of this cause a judgment be entered clarifying and fixing the status of the parties hereto with reference to said Use Tax on the class of articles set out above, and that complainant recover a judgment for the amounts of tax paid under protest as above set out."

Demurrer was sustained to the original bill. Complainant thereafter amended its bill to describe in greater particularity the items which it claims are exempt from the payment of use tax, but upon which such tax was paid under protest. Demurrer filed to the bill as amended was sustained. From the decree sustaining the demurrer to the bill as amended, the complainant has appealed to this court.

Subsequent to appeal, but prior to submission in this court, Philip J. Hamm resigned as Commissioner of Revenue and Roy E. Blair was appointed his successor. By agreement of the parties, the name of Roy E. Blair has been substituted for the name of Philip J. Hamm.

Complainant, appellant here, seems to have completely abandoned its contention that there was no liability for use tax to the State of Alabama because sales tax had been paid on the items in other states in which they had been purchased.

In brief filed here on behalf of appellant, complainant below, it is said: "There are two questions presented by the appeal, (1) whether oil is a mineral and the extraction thereof from beneath the surface of the ground constitutes 'mining' and (2) whether the machinery described in the assessments made by the State Department of Revenue and which is also described in the bill of complaint is exempt under subdivision (q) [now subdivision (p)] of Section 789, Title 51, Code of Alabama 1940, which refers to machines and machinery used for mining tangible personal property."

It is not always appropriate to make a construction or determination of rights or status on a demurrer to a bill seek-

ing a declaratory judgment. Ordinarily, where the bill for a declaratory judgment shows a bona fide justiciable controversy which should be settled, the demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree. As pointed out in Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11, the test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all. If the complaint states the substance of a bona fide justiciable controversy which should be settled, a cause of action for a declaratory judgment is stated and the demurrer should be overruled. City of Bessemer v. Bessemer Theatres, 252 Ala. 117, 39 So.2d 658, and cases cited.

■ But where, as here, counsel for both sides seem to desire to have the matter considered by this court on the appeal from the ruling on demurrer, we may proceed to do so. McCall v. Nettles, 251 Ala. 349, 37 So.2d 635.

It is complainant's contention that it is entitled to be refunded the use tax paid by it under protest on certain equipment used in connection with its oil drilling operations in this state for the reason that the equipment used is a machine and the process of extracting oil from beneath the surface of the earth is mining and therefore the use of such equipment is expressly exempt from use tax by the terms of § 789(p), Title 51, Code 1940, as amended. § 789, Title 51, supra, deals with exemptions from use tax. Subdivision (p) of that section is as follows: "Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

The bill as amended avers in detail the type of equipment used and the function which the several types perform as going to show that the equipment is a machine within the meaning of subdivision (p) of § 789, Title 51, supra. But that question need not be considered unless we are in accord with the position of complainant below, appellant here, that the process of extracting oil from beneath the surface of the earth constitutes "mining" as that word is used in subdivision (p), § 789, Title 51, supra. We think it well to point out that it is not argued here that complainant was exempt from payment of use tax because the equipment is a machine used in "compounding, processing, or manufacturing tangible personal property". Subdivision (p), § 789, Title 51, Code 1940, as amended.

■ It seems to be generally recognized that the term "mineral" ordinarily embraces oil, petroleum and natural gas unless it appears in the particular case that it is used in a more restricted sense. The following cases from other jurisdictions cited by counsel for appellant seem to support appellant's contention that oil is a mineral. Mid-Northern Oil Co. v. Walker, 65 Mont. 414, 211 P. 353; Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Texas Pacific Coal & Oil Co. v. Howard, Tex.Civ.App., 212 S.W. 735; Isom v. Rex Crude Oil Co., 147 Cal. 659, 82 P. 317; Weaver v. Richards, 156 Mich. 320, 120 N.W. 818; Fourth & Central Trust Co. v. Woolley, 31 Ohio App. 259, 165 N.E. 742; Rice Oil Co. v. Toole County, 86 Mont. 427, 284 P. 145; In re Great Western Petroleum Corp., D.C., 16 F.Supp. 247; Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986; Lovelace v. Southwestern Petroleum Co., D.C., 267 F. 504, affirmed 6 Cir., 267 F. 513; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108; Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46; Crain v. Pure Oil Co., 8 Cir., 25 F.2d 824; Warren v. Clinchfield Coal Corp., 166 Va. 524, 186 S.E. 20; Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867; Standard Pipe & Supply Co. v.

Red Rock Co., 57 Cal.App.2d 897, 135 P.2d 659; Shell Petroleum Corp. v. Caudle, 5 Cir., 63 F.2d 296; Ryan v. Amazon Petroleum Corp., 5 Cir., 71 F.2d 1; People ex rel. Carrell v. Bell, 237 Ill. 332, 86 N.E. 593, 19 L.R.A.,N.S., 746; Gulf Refining Co. v. Garrett, 209 La. 674, 25 So.2d 329.

In Rechard v. Cowley, 202 Ala. 337, 338, 80 So. 419, 420, we said: "* * * Oil and gas are furtive, migratory, self-transmissive minerals; and because of this characteristic or quality contracts and rights relating thereto require the application of principles different, in many respects, from those applicable to other minerals that are not affected with the characteristics a learned court has described as ferae naturae. Ohio Oil Co. v. Indiana, 177 U.S. 190, 202 et seq., 20 S.Ct. 576, 44 L.Ed. 729; 18 R.C.L. pp. 1205 et seq; White on Mines and Mining, §§ 162 et seq. * * *" See McCombs v. Stephenson, 154 Ala. 109, 44 So. 867.

But the fact that it is generally recognized that oil is a mineral is not decisive of the question at hand.

The question is presented as to whether the extraction of oil from beneath the surface of the earth constitutes "mining" as that word is used in § 789(p), Title 51, Code 1940, as amended.

We have been furnished with excellent briefs by counsel for both parties and authorities have been cited from other jurisdictions both for and against the proposition that an oil well is a mine and the process of extracting oil is mining.

It has been held that the process of extracting oil from beneath the surface of the earth is mining and that an oil well is a mine. Mid-Northern Oil Co. v. Walker, supra; Rice Oil Co. v. Toole County, supra; People ex rel. Carrell v. Bell, supra; Etchison Drilling Co. v. Flournoy, supra; Gulf Refining Co. v. Garrett, supra; In re Great Western Petroleum Corp., supra; Shell Petroleum Corp. v. Caudle, supra; Ryan v. Amazon Petroleum Corp., supra. The holdings in these cases must, of course, be considered in the light of the specific question before the court.

The opposite view is expressed in the following cases: Guffey Petroleum Co. v. Murrel, 127 La. 466, 53 So. 705; Barton v. Wichita River Oil Co., Tex.Civ.App., 187 S.W. 1043; Carter v. Phillips, 88 Okl. 202, 212 P. 747; Kreps v. Brady, 37 Okl. 754, 133 P. 216, 47 L.R.A.,N.S., 106; Hollingsworth v. Berry, 107 Kan. 544, 192 P. 763, 11 A.L.R. 151; Cornwell v. Buck & Stoddard, Inc., 28 Cal.App.2d 333, 82 P.2d 516.

We see no occasion to make an analysis of the cases bearing on this point cited above. However, since cases from Louisiana are cited in support of both sides of the question, we call attention to the fact that the later decisions from that state which tend to hold that the extraction of oil is mining are predicated on the fact that the legislature of that state so defined it subsequent to the decision in Guffey Petroleum Co. v. Murrel, supra, which holds to the contrary view. It is also pointed out in the later cases that in the Guffey case the court was dealing with a claim of exemption from taxation. In the Great Western Petroleum Corp. case, supra, the Federal District Court construed a California statute containing the words "mining purpose" as including oil wells. However, subsequent to that decision the California courts in construing their own statute have held to the contrary. Cornwell v. Buck & Stoddard, Inc., et al., supra. In Standard Pipe & Supply Co. v. Red Rock Co., supra, it is said: "* * * Also, in California, oil is recognized as a mineral, Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871, and drilling for it is classified as a placer mining operation (Berentz v. Belmont Oil Mining Co., supra [148 Cal. 577, 84 P. 47], although it has been held that drilling for oil does not come within the technical definition of 'mining' as that word is used in section 2980 of the Civil Code. Cornwell v. Buck & Stoddard, Inc., 28 Cal.App.2d 333, 82 P.2d 516." 135 P.2d 662.

Our question is, did the legislature intend to exempt from use tax machines used in drilling for oil? Otherwise expressed, the question is, did the legislature intend that the word "mining" include the process

of extracting oil from beneath the earth's surface?.

There is no language in the statute, § 789(p), Title 51, Code 1940, which can be said to clearly show such an intent. So in addition to the principle that exemptions from taxation are strictly construed against the taxpayer and in favor of the state, we must consider another generally accepted canon of statutory construction, which is that where there is nothing to indicate to the contrary, words in a statute will be given the meaning which is generally accepted in popular, every-day usage. Pullman-Standard Car Mfg. Co. v. State, 253 Ala. 638, 46 So.2d 500.

We certainly cannot say that at the time the use tax law was enacted in this state, the word "mining" in its everyday usage was considered to include the process of extracting oil. While the search for oil has gone on to some extent in this state for many years, there was very little, if any, oil produced in the state prior to the time the use tax law became effective.

At the time the use tax law of this state became effective there was, in so far as our research discloses, no expression of the legislature contained in any of the numerous statutes relating to mines and mining showing that the lawmakers considered the process of extracting oil to constitute mining. On the other hand, there was on our statute books a comprehensive law, complete in itself, dealing with "oil" and "gas" and nowhere in it are the terms "mine" or "mining" used. §§ 5085–5097, Code 1923, §§ 167–179, Title 26, Code 1940. The terms "oil wells" and "drilling" are used throughout.

There was no decision of this court indicating that the process of extracting oil constituted mining. No Alabama case has come to our attention wherein the word "mining" has been defined or its meaning applied. However, we have dealt with the meaning of the word "mine" as it appeared in § 1035, Code 1907. In Cole v. Sloss-Sheffield Steel & Iron Co., 186 Ala. 192, 65 So. 177, we held that the word "mine" as used in § 1035, Code 1907, included ore as well as coal mines. But in Sloss-Sheffield Steel &

Iron Co. v. Bearden, 199 Ala. 132, 74 So. 230, the majority of the court held that the word "mine" as used in that section applied to underground mines only and not to open or surface mines. That conclusion was reached in view of the purpose to be accomplished by the statute, to protect employees in underground mines, whether coal or ore.

When tested by the rules of construction here applicable, we do not believe the legislature intended that the word "mining" as used in § 789(p), Title 51, Code 1940, as amended, include the process of extracting oil from beneath the earth's surface.

The decree appealed from is affirmed.

Affirmed.

All the Justices concur.